UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
v. ) CRIMINAL ACTION NO. 07-10313-PBS
JAMONT DUBOSE, )
Defendant. )

**MEMORANDUM AND ORDER**

March 31, 2008

Saris, U.S.D.J.

**INTRODUCTION**

Defendant Jamont DuBose has been charged with being a felon in possession of a firearm and ammunition. He now moves to suppress his statements and the loaded handgun seized from him during a stop and frisk on the ground that the police did not have reasonable suspicion to make the stop. At the evidentiary hearing, Officers Emanuel Canuto and Matthew Ryan testified for the government. Defendant and Janine Nicolau, a paralegal, testified for the defense. After an evidentiary hearing and a review of the submissions, the motion is **DENIED**.

**BACKGROUND**

On February 22, 2007 at about 2:30 p.m., Boston Police Officers Emanuel Canuto and Matthew Ryan were in plain clothes in an unmarked car, driving on a routine patrol on Washington Street, headed toward Fuller Street, in Dorchester. They were

driving 15-20 m.p.h. The area that they were patrolling is primarily residential, but also includes several small shops. Although a shooting had occurred about four months earlier in this general area, it was not a so-called "hot spot" with a recent unusually active pattern of crime.

The officers observed a Toyota Camry with two male occupants driving on Fairmount Street towards its intersection with Washington Street. The Camry double-parked on Fairmount, approximately two to three car lengths from the intersection. At the same time, the officers saw a male, later identified as Defendant Jamont DuBose, walking on Washington Street and then turning onto Fairmount Street, heading directly for the Camry. After Defendant reached the Camry, the officers saw him lean into the car through the window of the driver's side door; Defendant's body from the waist up and both of his hands were inside the car. He then walked away from the car. The whole encounter was brief. The officers could not see what he was doing inside the car.[1]

Suspecting they had witnessed a drug transaction, the officers immediately turned around at the intersection of

---

[1] Defendant testified to another version of events which I don't find credible. He said he had slept over at his aunt's house and was walking on Fairmount Street towards Washington Street when he passed a stopped car, and the driver asked briefly if he knew "Terrence." Defendant said he answered in the negative and kept walking. He denied going to the driver's window or leaning inside the car. However, the two police officers corroborated each other's testimony and their testimony is also consistent with a contemporaneous police report.

Washington and Fuller Streets and saw the Camry take a left on Washington Street, heading towards Fuller Street. They also saw Defendant backtrack, returning in the same direction on Fairmount Street to the intersection, and then taking a left on Washington Street towards Fuller Street. The police officers believed this was a pre-arranged meeting.

The officers then parked at an angle on the wrong side of Washington Street and exited the car in order to talk to Defendant. Both officers had badges displayed prominently around their necks. At that time, Defendant was walking away from the officers with his back to them. Officer Canuto asked Defendant, who was approximately ten feet away, "Excuse me, sir, can I talk to you for a second?" Officer Canuto did not yell at Defendant, but spoke loudly enough to ensure that he would be heard. Defendant continued walking away and kept his right hand inside the pocket of his hoodie. Speaking more loudly, Officer Canuto asked Defendant at least one or two additional times to turn around and speak with him. Officer Canuto believed, correctly, that Defendant heard him and ignored him the first couple of times that Officer Canuto spoke to him. Finally complying with Officer Canuto's order, Defendant turned around, keeping his right hand in his hoodie pocket.

At this time, Officer Ryan was speaking to some teenage males who were standing nearby, in front of a pizza shop, and who

had asked him why the police were stopping. Officer Ryan was not with Officer Canuto when Defendant finally stopped and turned to Officer Canuto.

Officer Canuto feared that Defendant was carrying a gun and told him to remove his hand from his pocket. Defendant refused to comply. Officer Canuto repeated the order several more times and Defendant eventually complied. Fearing for his own safety, Officer Canuto performed a pat-frisk of Defendant's pocket. In this pocket, Officer Canuto felt a hard object he believed to be consistent with a firearm. Officer Canuto touched the item through Defendant's hoodie and asked, "What is this?" Defendant responded, "That's not mine." Officer Canuto reached into the pocket and pulled out a silver .22 caliber Imperial revolver.

After Officer Canuto alerted Officer Ryan that he had retrieved a gun, Defendant ran towards Croftland Avenue. After a brief foot chase, which ended in front of 882 Washington Street, Defendant was caught and placed in handcuffs. As he was being placed under arrest, Defendant spontaneously stated, "I just found it and picked it up."

After arresting Defendant, the officers saw the same black Camry that they had observed approximately five minutes earlier. They performed a traffic stop. A Field Interrogation and Observation was conducted of both the driver and passenger; they were both released after they were pat-frisked and the car was

searched. Both claimed that they did not know Defendant.

The gun was loaded with seven rounds of ammunition.

**DISCUSSION**

Under Terry v. Ohio, 392 U.S. 1, 30 (1968), police officers may perform a brief, investigatory stop of an individual based on reasonable suspicion of criminal activity. See United States v. Moore, 235 F.3d 700, 703 (1st Cir. 2000). An officer's "initial approach and general inquiry" does not trigger Fourth Amendment scrutiny even when defendant responds. United States v. Holloway, 499 F.3d 114, 117 (1st Cir. 2007) "Under the Fourth Amendment, a seizure occurs when a police officer, by means of physical force or a show of authority, has in some way restrained the liberty of a citizen." United States v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994). In addition, "[t]he show of authority must be such that a reasonable person would believe that he was not free to leave." Holloway, 499 F.3d at 117. A seizure also requires that the person allegedly seized must actually submit to the show of authority. Id. The Supreme Court has explained that "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Florida v. Bostick, 501 U.S. 429, 437 (1991) (quotation marks omitted).

I find that Defendant was seized when Officer Canuto,

wearing his badge prominently, told him to remove his hand from his pocket. At that point, a reasonable person would believe he was not at liberty to ignore the police order and leave.

The crux of the parties' dispute is whether or not Officer Canuto had the reasonable suspicion necessary to conduct a Terry stop of Defendant. "[T]he applicable standard in determining the propriety of a Terry stop is whether a defendant's acts give rise to an articulable, reasonable suspicion of criminal activity." United States v. Trullo, 809 F.2d 108, 112 (1st Cir. 1987). The standard is objective; the relevant inquiry is "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" Terry, 392 U.S. at 21-22 (quotation marks omitted).

Defendant maintains that the officers did not have the reasonable suspicion that he was engaged in an unlawful drug transaction. Defendant points out that the encounter took place in broad daylight in a neighborhood not considered to be a high-crime area.

The government answers that the officers reasonably considered Defendant's brief encounter with the car to be suspicious because of both the apparently pre-arranged nature of the meeting and his leaning his entire upper body through the driver's side window. See Trullo, 809 F.2d at 112 ("In the officers' judgment a clandestine transaction had taken place, a

judgment to which we give appropriate deference.”).

Once Defendant turned around in response to the officer’s inquiry and kept his hand in his pocket, Officer Canuto appropriately ordered him to remove his hand from his pocket and frisked him in order to protect his own safety. See Terry, 392 U.S. at 30 (“where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others’ safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.”).

**ORDER**

Defendant's motion to suppress [Docket No. 14] is **DENIED**.

**S/PATTI B. SARIS**
United States District Judge