UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMONT DUBOSE,
     Petitioner,

        v.                    CR. No. 07-10313-PBS
                              (Related to C.A. 11-11249-PBS)
UNITED STATES OF AMERICA,
     Respondent.

MEMORANDUM AND ORDER
September 23, 2011

SARIS, D.J.

## I.  INTRODUCTION

Now pending before this Court is defendant Jamont F. Dubose's ("Dubose") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Docket No. 62), and the Government's Initial Request for Summary Dismissal (Docket No. 64).

## A.  Relevant Procedural History

On September 19, 2007, an Indictment was returned charging Dubose with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g).  During the criminal proceedings, an evidentiary hearing was held on Dubose's motion to suppress evidence, and on March 31, 2008, this Court denied the motion.  See Memorandum and Order (Docket No. 27).

On June 10, 2008, Dubose entered a change of plea and pled guilty.  On October 2, 2008, a sentencing hearing was held.  This Court found the Armed Career Criminal Act ("ACCA"), 18 U.S.C.

§ 924(e)(1), applied to Dubose, and sentenced him to a term of imprisonment of 180 months.  See Judgment (Docket No. 39).

Dubose filed a Notice of Appeal (Docket No. 40) on October 8, 2008.  Thereafter, an Amended Judgment (Docket No. 47) entered.

On September 1, 2009, the United States Court of Appeals for the First Circuit ("First Circuit") affirmed this Court's denial of Dubose's motion to suppress.  See Judgment (Docket No. 56); Mandate (Docket No. 59, entered Oct. 20, 2009)(denying petition for rehearing and petition for rehearing en banc); United States v. Dubose, No. 08-2382 (1st Cir. 2009).  On November 1, 2010, Dubose's petition for writ of certiorari to the United States Supreme Court was denied.  See DuBose v. United States, 131 S.Ct. 536 (2010)(No. 10-6629).

On April 25, 2011, Dubose filed a pleading entitled "Affidavit to Vacate A.C.C.A. Enhancement" (Docket No. 60).  In that pleading, Dubose requested this Court consider his motion for relief from his enhanced sentence, pursuant to 18 U.S.C. § 3582.  He alleged that his ACCA sentence was imposed in error because one of the predicate offenses, a Massachusetts assault and battery on a police officer ("ABPO") was based, improperly, on a plea colloquy from this prior conviction.[1]  He maintained

_____

[1]Dubose argued that the plea colloquy was concurrent with another criminal case, involving a misdemeanor for simple assault, and

2

that the Government had not met its initial burden of proving the predicate conviction. In addition, Dubose argued that this Court erred in concluding that every ABPO qualified as a "violent felony" under the ACCA.

On May 13, 2011, this Court issued a Memorandum and Order (Docket No. 61) construing Dubose's "Affidavit to Vacate A.C.C.A. Enhancement" (Docket No. 60) as a motion to modify the judgment of conviction pursuant to 18 U.S.C. § 3582. This Court denied the motion because none of Dubose's arguments fell within the three narrow exceptions for modification set forth in 18 U.S.C. § 3582(c).[2]  See United States v. Dubose, 2011 WL 1842825, *2 (D. Mass. 2011).

B.    The Section 2255 Motion

After the denial of the § 3582 motion, on July 15, 2011, Dubose filed the instant § 2255 motion, along with an incorporated Memorandum in support (Docket No. 62). This Court directed service of the motion and a response by the respondent. See Service Order (Docket No. 64).

---

thus was not a basis for application of the ACCA.

[2]This Court also noted that there was a fundamental problem with Dubose's claims because a review of the Presentence Report did not reveal any predicate offenses of Assault and Battery on a Police Officer, as Dubose argued.

In Dubose's § 2255 motion, he seeks relief from his

conviction and/or sentence, either by dismissal of the

Indictment, or the grant of a new trial.  He raises four grounds

in support, although he discusses two of these grounds together

as Ground Two.  Additionally, he raises other grounds in the

Memorandum in Support that are not contained in the § 2255 motion

itself.  These grounds, considered together, are as follows.

> 1.  <u>Challenges to Prior Convictions Used for ACCA
>     Enhancement</u>

> > A.  <u>The Assault and Battery Offense</u>

First, Dubose contends that his Massachusetts Assault and

Battery plea colloquy from the conviction (Docket No. 0607-cr-

0758) did not categorically qualify as a "violent felony" under

the ACCA.[3]  He claims that he never pled to facts constituting a

---

[3]The criminal history record summary of this state case is set
forth in the Presentence Report ("PSR"), ¶ 40.  On April 27,
2006, Dubose was charged in the Dorchester District Court with
Assault and Battery, and was convicted.  He was sentenced on
August 16, 2006 to 18 months probation.  On February 23, 2007, he
was detained for a violation of probation due to a new arrest.
On March 1, 2007, he was found to be violation of probation and
received 2.5 years in the House of Correction, 18 months
committed, with the balance suspended and probation to March 1,
2009, with credit for 13 days.  On June 13, 2008 he was released
and transferred into federal custody.  As background, the PSR,
¶ 40 states:

> Court records reflect that the defendant was
> represented by counsel.  The complaint alleges that the
> defendant "did assault and beat" a female victim.  The
> offense occurred on 1/28/06 in Dorchester, MA.  A

violent felony, and that, despite the charging instrument's use of the phrase "did assault and beat," he did not commit a crime of violence.  He also argues that the Massachusetts assault and battery statute covers offenses that are both violent and non-violent (including those that are nothing more than an offensive touching).  <u>See</u> Section 2255 Motion (Docket No. 62 at 4, ¶ 12).  Finally, in his Memorandum in support, Dubose claims that his plea was to a simple assault, and constituted a misdemeanor because he received a sentence of 18 months probation (*i.e.*, a term of imprisonment of 100 days or less).  <u>See</u> Section 2255 Motion (Docket No. 62-3 at 2).  Therefore, he contends, this conviction may not be deemed to be a "violent felony" under the

---

warrant issued, and the defendant was arrested on 4/7/06.

Information from the Boston Police Department reflects that on 1/28/06 at 3:45 p.m., officers responded to a domestic violence call.  The victim indicated that she had an argument with her boyfriend, the defendant, over use of her checking account.  According to the victim, when she refused to let the defendant use her account, he punched her in the face.  Officers observed the victim to have a swollen lip with blood on it.  The victim refused medical attention and was advised to seek a restraining order.

The Probation Office has attempted, but not yet had the opportunity, to speak with the defendant's probation officer.

<u>Id.</u>

ACCA.

B.    <u>The December 1, 2003 Resisting Arrest Offense</u>

Dubose also presents a separate challenge to the use of another state conviction as a prior violent felony conviction under the ACCA.  He claims that his Resisting Arrest charge out of the Dorchester District Court (Docket No. 0307-7480H), for which he received six months in the House of Correction on June 22, 2004, was not a "crime of violence."  <u>Id.</u> at 2.[4]

_____

[4]The criminal history record summary of this state case is set forth in the PSR, ¶ 39.  On December 1, 2003, Dubose was charged in the Dorchester District Court with Resisting Arrest, and was convicted.  On June 22, 2004, he received a sentence of six months in the House of Correction, committed, concurrent with Docket No. 03-7001.  He was also charged with various other offenses, including traffic and motor vehicle offenses.  The PSR, ¶ 39 states:

> Court records reflect that the defendant was
> represented by counsel.  On Count A, the defendant was
> originally charged with Possession to Distribute a
> Class D Drug.  On Count E, the defendant was originally
> charged with Malicious Destruction of Property Over
> $250.  Both charges were amended prior to disposition.
> The offense occurred and the defendant was arrested on
> 11/29/03 in Dorchester, MA.

> Information from the Boston Police Department reflects
> that on 11/29/03 at 5:20 a.m., officers on patrol
> observed a vehicle with an attached plate.  Officers
> followed the vehicle and it took off at a high rate of
> speed.  The defendant, who was operating the vehicle,
> drove into a school parking lot and jumped out of the
> vehicle while it was moving, causing the vehicle to
> crash into a fence on school property.  The defendant
> fled from officers on foot and dropped a jacket that he
> was wearing along the way.  The defendant eventually

6

C.      The November 10, 2003 Drug Offense and the
        Resisting Arrest Offense

Next, Dubose contends that his prior state convictions

arising out of Massachusetts District Court cases do not amount

to felonies; rather, they are misdemeanor offenses only.  Dubose

argues in his Memorandum in Support that the state district

courts do not have jurisdiction to sentence prisoners to a state

prison.  Since he was tried in the district court, -- and not the

state superior court -- he contends that his offenses may not be

considered as felonies.  Thus, he asserts that his drug offenses

(Docket No. 0307-cr-7001D), which ran concurrent with other

charges, cannot be used to enhance his sentence under the ACCA.[5]

Dubose does not address specifically the concurrent Resisting

───────────────────

        stopped running and was arrested.  Officers found six
        plastic bags of marijuana in his jacket pockets, along
        with a cell phone, and $150 in cash.  The defendant's
        motor vehicle registration had been revoked and the
        defendant acknowledged that he did not have a license.

Id.

[5]The criminal history record summary of this state case is set
forth in the PSR, ¶ 38.  On November 10, 2003, Dubose was charged
in the Dorchester District Court with Drug Violations Near a
School/Park, Resisting Arrest, other drug offenses.  On June 22,
2004, he received a sentence of two years in the House of
Correction, committed, concurrent with Docket No. 03-7480 and 99-
10481-01.

Arrest charge (Docket No. 0307-cr-7001E).[6]

---

[6]With respect to the underlying factual background, the PSR, ¶ 38
states:

> Court records reflect that the defendant was
> represented by counsel.  The offense occurred and the
> defendant was arrested on 11/7/03 in Dorchester, MA.
>
> Information from the Boston Police Department reflects
> that on 11/7/03 at 7:20 p.m., members of the drug unit
> observed a man making calls, counting currency, and
> waiting in front of a Dunkin' Donuts near Bailey Street
> and Dorchester Avenue.  Officers observed the defendant
> pull up in a vehicle, exit the vehicle, take money from
> the man who had been waiting, and give the man a small
> object.  Believing that a drug transaction had
> occurred, officers stopped the man on the street, who
> admitted to swallowing two $30 bags of drugs that he
> had just purchased from the defendant.  Other officers
> followed the defendant's vehicle and stopped him.  As
> they approached the defendant, they saw him putting an
> object in his mouth and swallowing it.  The defendant
> pushed away from officers and fled, leading officers on
> a pursuit.  Officers caught the defendant, and he
> struggled while they were placing him under arrest.
> They noticed him gagging and then observed him spit out
> three plastic bags containing what was believed to be
> cocaine.  Several officers were treated for injuries.
> Upon arrest, the defendant was found in possession of
> two plastic bags of marijuana, $536 in cash, and a cell
> phone.

Id.  Dubose was convicted of the Resisting Arrest offense (Docket
No. 0307-cr-7001E) and sentenced to six months in the House of
Correction, concurrent with Count D (the drug violation charge).
The Addendum to the PSR reflects that defense counsel made
Objections to ¶¶ 37-40, and also contested the application of the
ACCA.  The Probation Officer responded to these Objections and
made no revisions.

2.   <u>Challenges Based on Ineffective Assistance of Counsel</u>
        <u>and District Court Error in Relying on the PSR</u>

     Second, Dubose asserts an ineffective assistance of counsel

claim against his defense counsel, Attorney Daniel J. Cloherty,

both as trial counsel and as appellate counsel.[7]  He claims that

counsel failed to object to the plea colloquy with respect to the

assertion that the ACCA applied to Dubose.  <u>Id.</u> at 5.[8]  He also

asserts counsel failed to investigate his version of the facts

and/or failed to investigate properly his past criminal history

or present evidence about this, and failed to object to the PSR

conclusion that he falls under the ACCA.

     In the same paragraph, Dubose asserts a third ground for

relief -- that this Court improperly relied on the U.S. Probation

---

[7]Although Dubose's Motion itself contains claims of ineffective
assistance of counsel and District Court error in finding him
eligible for ACCA enhancement under Ground Two, his attached
Memorandum in support intermingles these claims as part of his
Ground One and Ground Two.  <u>See</u> Section 2255 Motion (Docket No.
62-2 at 1).

[8]In his Memorandum in Support, Dubose contends that Attorney
Cloherty allowed him to be misled in court, and made him believe
he was eligible for an ACCA enhancement.  As a result, he
accepted a plea bargain which included an ACCA enhancement.
Additionally, Dubose contends that during the appeal process,
Attorney Cloherty failed to raise "very substantial, serious
issues" that he wanted him to raise, and thus the outcome of the
decision would have been different.  Dubose does not state what
those issues were, or how or why the outcome would have been
different.  <u>See</u> Section 2255 Motion (Docket No. 62-4 at 1).

Office's "misinformation" in the PSR with respect to the charging documents, in order to find Dubose eligible for an enhancement under the ACCA.  He asserts the PSR mischaracterized his past criminal history and offense conduct, leading this Court to find prior convictions constituted "violent felonies."  He further claims this Court failed to review properly his criminal record *de novo*.  Section 2255 Motion (Docket No. 62 at 5).

>    3.    Challenges to the Conviction Based on Police Officers' Alleged Violations of Law

Dubose's fourth ground for relief challenges the validity of his conviction rather than his enhanced sentence.  He contends that his constitutional rights were violated when the Police Officers concluded they had a reasonable suspicion to stop him as they observed him approach and lean into a car in the mid-afternoon in a neighborhood that was not a high crime area.[9]

---

[9]This Court outlined the underlying factual background in the Memorandum and Order denying Dubose's Motion to Suppress.  To reiterate for completeness, the relevant background is as follows:

> On February 22, 2007 at about 2:30 p.m., Boston Police Officers Emanuel Canuto and Matthew Ryan were in plain clothes in an unmarked car, driving on a routine patrol on Washington Street, headed toward Fuller Street, in Dorchester.  They were driving 15-20 m.p.h.  The area that they were patrolling is primarily residential, but also includes several small shops.  Although a shooting had occurred about four months earlier in this general area, it was not a so-called "hot spot" with a recent unusually active pattern of crime.  The officers

observed a Toyota Camry with two male occupants driving
on Fairmount Street towards its intersection with
Washington Street.  The Camry double-parked on
Fairmount, approximately two to three car lengths from
the intersection.  At the same time, the officers saw a
male, later identified as Defendant Jamont DuBose,
walking on Washington Street and then turning onto
Fairmount Street, heading directly for the Camry.
After Defendant reached the Camry, the officers saw him
lean into the car through the window of the driver's
side door; Defendant's body from the waist up and both
of his hands were inside the car.  He then walked away
from the car.  The whole encounter was brief.  The
officers could not see what he was doing inside the
car.

Suspecting they had witnessed a drug transaction, the
officers immediately turned around at the intersection
of Washington and Fuller Streets and saw the Camry take
a left on Washington Street, heading towards Fuller
Street.  They also saw Defendant backtrack, returning
in the same direction on Fairmount Street to the
intersection, and then taking a left on Washington
Street towards Fuller Street.  The police officers
believed this was a pre-arranged meeting.  The officers
then parked at an angle on the wrong side of Washington
Street and exited the car in order to talk to
Defendant.  Both officers had badges displayed
prominently around their necks.  At that time,
Defendant was walking away from the officers with his
back to them.  Officer Canuto asked Defendant, who was
approximately ten feet away, "Excuse me, sir, can I
talk to you for a second?" Officer Canuto did not yell
at Defendant, but spoke loudly enough to ensure that he
would be heard.  Defendant continued walking away and
kept his right hand inside the pocket of his hoodie.
Speaking more loudly, Officer Canuto asked Defendant at
least one or two additional times to turn around and
speak with him.  Officer Canuto believed, correctly,
that Defendant heard him and ignored him the first
couple of times that Officer Canuto spoke to him.
Finally complying with Officer Canuto's order,
Defendant turned around, keeping his right hand in his

hoodie pocket.  At this time, Officer Ryan was speaking to some teenage males who were standing nearby, in front of a pizza shop, and who had asked him why the police were stopping.  Officer Ryan was not with Officer Canuto when Defendant finally stopped and turned to Officer Canuto.  Officer Canuto feared that Defendant was carrying a gun and told him to remove his hand from his pocket.  Defendant refused to comply. Officer Canuto repeated the order several more times and Defendant eventually complied.  Fearing for his own safety, Officer Canuto performed a pat-frisk of Defendant's pocket.  In this pocket, Officer Canuto felt a hard object he believed to be consistent with a firearm.  Officer Canuto touched the item through Defendant's hoodie and asked, "What is this?" Defendant responded, "That's not mine."  Officer Canuto reached into the pocket and pulled out a silver .22 caliber Imperial revolver.  After Officer Canuto alerted Officer Ryan that he had retrieved a gun, Defendant ran towards Croftland Avenue.  After a brief foot chase, which ended in front of 882 Washington Street, Defendant was caught and placed in handcuffs.  As he was being placed under arrest, Defendant spontaneously stated, "I just found it and picked it up."  After arresting Defendant, the officers saw the same black Camry that they had observed approximately five minutes earlier.  They performed a traffic stop.  A Field Interrogation and Observation was conducted of both the driver and passenger; they were both released after they were pat-frisked and the car was searched.  Both claimed that they did not know Defendant.  The gun was loaded with seven rounds of ammunition.

Memorandum and Order (Docket No. 27) at 1-5.  This Court found that when Dubose was seized by Officer Canuto, who was prominently wearing his badge, and told Dubose to remove his hands from his pocket, at that point, a reasonable person would believe that he was not free to ignore the police order and leave the scene.  Id. at 6.  This Court further found that Officer Canuto was entitled to frisk Dubose for his own safety.  Id. at 7.

The next allegation concerning the Officers' conduct regarding a
pat frisk of Dubose after the stop is not set forth clearly;
however, it appears he also contends that the Officers did not
have reasonable suspicion to pat frisk him because Dubose had
complied with the order to remove his hands from his pocket.[10]
In his Memorandum in Support, Dubose contends that the Police
Officers did not observe any kind of interaction, exchange, or
involvement of Dubose with the occupants of the motor vehicle,
that the occupants were not known to them, and that there were no
reports of any criminal activity involving him, the vehicle, or
the area.[11]  He further contends that the Police Officers

------

[10]In his Memorandum in Support, Dubose also interposes other
issues related to the Police Officers' conduct as well as their
knowledge at the time of the incident (*e.g.*, whether the Camry
and the individuals were known to the Officers, whether there had
been any report of criminal activity in the area, whether
anything had occurred after he leaned into the car that would
support a reasonable suspicion that a crime had occurred, whether
the Officers conduct involved a "Clandestine Meeting," [between
him and the occupants of the vehicle], whether the Officers
observed an interaction involving Dubose and other passengers in
the vehicle, whether he had been given his <u>Miranda</u> rights, etc.).
<u>See</u> Section 2255 Motion (Docket No. 62-2 at 1-2).

[11]Dubose attaches to his motion excerpts of the Evidentiary
Hearing on the Motion to Suppress, along with the Boston Police
Report regarding his arrest on February 22, 2007.  <u>See</u> Section

harassed and intimidated him by following him in their vehicle, and then, later, grabbing him by the elbow and demanding he take his hands out of his pockets, and barring him from leaving. After Dubose fled the scene and was caught a half a block away after a foot chase, he was questioned and placed in the back of the police cruiser.  Dubose claims that while being held in the cruiser, he was never given his <u>Miranda</u> rights.

In the body of the Memorandum in Support of his § 2255 petition, Dubose seeks appointment of counsel.

C.    <u>The Government's Response and Motion for Summary Dismissal</u>

On July 21, 2011, the Government responded to the § 2255 petition by seeking summary dismissal.  <u>See</u> Response (Docket No. 64).  As grounds for dismissal, the Government contends that: (1) Dubose seeks to relitigate issues previously raised and decided against him both in this Court and on direct appeal;[12](2) Dubose's assertions are contradicted by the PSR, as well by recent decisions of the First Circuit in <u>United States v.</u>

---

2255 Motion (Docket No. 62-8).

[12]The Government cites to, *inter alia*, <u>United States v. Butt</u>, 731 F.2d 75, 76 n. 1 (1st Cir. 1984)("It is settled that a § 2255 motion may not revive issues previously determined on direct appeal"); <u>United States v. Moran</u>, 107 F.3d 1 (1st Cir. 1997)(same); and <u>Singleton v. United States</u>, 26 F.3d 233, 240 (1st Cir. 1993).

<u>Holloway</u>, 630 F.3d 252, 252 (1st Cir. Jan. 21, 2011) and <u>United States v. Dancy</u>, 640 F.3d 455 (1st Cir. Apr. 13, 2011);(3) even if <u>Holloway</u> applied in this case (to exclude the Assault and Battery offense from ACCA consideration), Dubose would still be considered an Armed Career Criminal because he has three other ACC predicate offenses; and (4) knowing the problems with his criminal record, Dubose has attempted to transform his ACC claim into one involving ineffective assistance of counsel, but he has failed to provide any information as to what any investigation by defense counsel would have uncovered, or how any investigation or objections would have impacted his ACC status.

On August 1, 2011, Dubose filed a Response to the Government's request for summary dismissal (Docket No. 65). Virtually all but one of his arguments in the Response reiterate the claims in his original § 2255 motion and memorandum in support.[13]  He raises a new argument, *i.e.*, that the Resisting

---

[13]The repeated arguments in the Response are as follows.  Dubose again argues that three prior convictions (*i.e.*, Resisting Arrest (No. 0307-CR-7480H), Assault and Battery (No. 0607-CR-0758), and Possession of Class B with intent to distribute (No. 0307-CR-7001D)) cannot constitute predicate convictions under the ACCA. He also contends that, with respect to the drug offense, "[t]he District Court may not impose a sentence to a state prison" (reiterating the claim that his offense was a misdemeanor and not a felony because it was imposed by the state district court and not the superior court).  Response (Docket No. 64 at 2).  Next, Dubose reasserts his ineffective assistance of counsel claims, arguing that his defense counsel failed to investigate the facts

Arrest and the Assault and Battery offenses are "crimes of

violence" under the Career Offender Guidelines, but cannot be

considered for purposes of the ACCA, which provides for "violent

felonies."  He maintains that the definitions for "crimes of

violence" and "violent felonies" are similar, but not identical.

He does not expound on the impact any differences would have in

this case.[14]

---

and criminal history; failed to file objections to the
Presentence Report which certified his ACCA status; "failed to
investigate the P.S.I.R. and sentencing proceeding and
violations," id.; and "[f]ailed to raise any serious issues that
was very important for the outcome of the decision."  Id.
Further, Dubose contends that his counsel failed to object to the
plea colloquy that charged him with being an Armed Career
Criminal.  Finally, Dubose contends that this Court improperly
relied on the Probation Office's misinformation on charging
documents to find him eligible for an ACCA enhancement.  He
contends that this Court failed to review properly the predicate
offenses before deeming them to constitute violent felonies.

[14]Without the need to address this issue in detail, this Court
rejects Dubose's argument.  The First Circuit in Holloway has
stated that "[t]he terms 'crime of violence' and 'violent felony'
are nearly identical in meaning.  Because of this, 'decisions
construing one term inform the construction of the other.'"
Holloway, 630 F.3d at 254 n.1 citing United States v. Willings,
588 F.3d 56, 58 n. 2 (1st Cir. 2009).  See Miller v. United
States, 2011 WL 2422845 (D. Mass. June 16, 2011 (same).  See also
United States v. Almenas, 553 F.3d 27, 34 n.7 (1st Cir. 2009)
(stating that: "Even though the Court in Begay [v. United States,
553 U.S. 137 (2008)] was interpreting the violent felony
definition of the Armed Career Criminal Act (ACCA), 18 U.S.C.
§ 924(e)(2)(B), and though much of its analysis appeared specific
to that statute, 'for both prudential and precedential reasons,
we have read that statute and the almost parallel guideline
language at issue [in the guidelines definition of crime of
violence] as being in pari passu.' [United States v.] Williams,

16

## II. DISCUSSION

A.   The Request For Appointment of Counsel

Although this Court has previously stated the issues raised by Dubose are complex, appointment of counsel under 18 U.S.C. § 3006A is not in the interests of justice in light of the lack of merit of his § 2255 motion, as discussed below.

Accordingly, this Court DENIES Dubose's request for counsel, contained in the body of his § 2255 motion.

B.   Standard of Review

1.   Review of Section 2255 Motions

Section 2255 of Title 28 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.  28 U.S.C. § 2255(a).  "[T]he statute provides for post-conviction relief in four instances, namely, if the

---

529 F.3d [1] at 6 [1st Cir. 2008]."")[brackets added].  In other words, the terms are interchangeable.  See United States v. Glover, 558 F.3d 71, n.3 (1st Cir. 2009)("The Guidelines' definition of "crime of violence" closely tracks the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and the residual clauses in each are identically worded.  We have considered these residual clauses to be relatively interchangeable, and have treated interpretations of one as persuasive authority relative to the other.").

petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)(citing Hill v. United States, 368 U.S. 424, 426-427 (1962)).

The defendant bears the burden of establishing the need for relief under § 2255. David, 134 F.3d at 474. See Mack v. United States, 635 F.2d 20, 26-27 (1st Cir. 1980). In order to obtain collateral relief, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).[15] Indeed, there is a presumption of finality of criminal convictions once all direct appeals have been completed. Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994) (citing Brecht v Abrahamson, 507 U.S.

---

[15]The Supreme Court in Frady rejected the plain error standard of review, stating: "We believe the proper standard for review of [petitioner's § 2255] motion is the 'cause and actual prejudice' standard enunciated in Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), and later confirmed and extended in Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 167-68.

18

619 (1993) and Frady, 456 U.S. at 164-65). "Postconviction

relief on collateral review is an extraordinary remedy, available

only on a sufficient showing of fundamental unfairness."

Singleton, 26 F.3d at 236.

Additionally, issues disposed of on direct appeal may not be

reviewed in a subsequent § 2255 proceeding absent an intervening

change in the law or a showing that manifest injustice would

otherwise result.  See United States v. Conley, 323 F.3d 7, 22

(1st Cir. 2003)("Claims that previously have been addressed on

direct review, however, may not be readjudicated collaterally

under § 2255 absent equitable considerations, such as actual

innocence or cause or prejudice."); United States v. Michaud, 901

F.2d 5, 6 (1st Cir. 1990)("We note that certain other claims

raised in the § 2255 motion were decided on direct appeal and may

not be relitigated under a different label on collateral

review."; citing Tracey v. United States, 739 F.2d 679, 682 (1st

Cir. 1984), cert. denied, 469 U.S. 1109 (1985) and Robson v.

United States, 526 F.2d 1145, 1147 (1st Cir. 1975)).  See also

United States v. Butt, 731 F.2d 75, 77 n.1 (1st Cir. 1984)("It is

settled that a § 2255 motion may not revive issues previously

determined on direct appeal, Dirring v. United States, 370 F.2d

862, 864 (1st Cir. 1967)").

Unless the petitioner claims a jurisdictional or

constitutional violation, a § 2255 claim will not be considered cognizable unless "the alleged error presents a 'fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with rudimentary demands of fair procedure.'" Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002)(citing Hill, 368 U.S. at 428).

    2.  Review of Ineffective Assistance of Counsel Claims

With respect to the standard for § 2255 claims raised under the Sixth Amendment[16] alleging ineffective assistance of counsel, a petitioner must prove by a preponderance of the evidence that "(1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." Bucuvalas v. United States, 98 F.3d 652, 658 (1st Cir. 1996) (citing Strickland v. Washington, 466 U.S. at 687). See Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010)("To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [petitioner] must show both deficient performance by counsel and resulting prejudice.").

---

[16]The Sixth Amendment of the United States Constitution states that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant is not merely entitled to the assistance of counsel, but the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984)(citing McMann v. Richardson, 397 U.S. 759, 774 n.14 (1970)).

The first prong of the <u>Strickland</u> test is satisfied where counsel's performance is "so inferior as to be objectively unreasonable." <u>United States v. McGill</u>, 11 F.3d 223, 226 (1st Cir. 1993). An attorney's conduct will be reasonable if it is found to fall "within the range of competence expected of attorneys in criminal cases." <u>United States v. Bosch</u>, 584 F.2d 1113, 1121 (1st Cir. 1978)(citations omitted). Moreover, courts have stressed that "effective representation" is not synonymous with "errorless representation;" the courts' review of counsel's performance must be deferential, and reasonableness must be considered in light of "prevailing professional norms." <u>Peralta</u>, 597 F.3d at 79 (citing <u>Strickland</u>, 466 U.S. at 688). The prejudice prong of the test requires that Dubose show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Smiley v. Maloney</u>, 422 F.3d 17, 20 (1st Cir. 2005)(citing <u>Strickland</u>, 446 U.S. at 694).

3.   <u>Review of Prior Convictions Under the ACCA</u>

Section 924(e)(1) of the ACCA provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any

21

other provision of law, the court shall not suspend the
sentence of, or grant a probationary sentence to, such
person with respect to the conviction under section
922(g).

18 U.S.C. § 924(e)(1).

ACCA predicate offenses include certain drug offenses and

"violent felonies."  Under section 924(e)(2)(B)(i) and (ii):

[T]he term 'violent felony" means any crime punishable
by imprisonment for a term exceeding one year ... that
--

(i)  has as an element the use, attempted use, or
threatened use of physical force against the person of
another; or

(ii) is burglary, arson, or extortion, involves use of
explosives, or otherwise involves conduct that presents
a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(i) and (ii).  See United States v.

Dancy, 640 F.3d 455, 464-65 (1st Cir. 2011).

In the ACCA sentencing statute, "[c]lause (i) is sometimes

referred to as the 'force clause.'  The portion of clause (ii)

following the enumerated offenses is known as the 'residual

clause.'"  Id. at 465 (quoting Holloway, 630 F.3d at 256; other

citations omitted).  See United States v. Oliveira, 2011 WL

2909816, *4-5 (D. Mass. July 21, 2011)(outlining history of the

ACCA, application of the residual clause of the ACCA, and noting

troubling matters concerning application of the ACCA).

The Supreme Court has employed a "categorical approach" in

determining whether an offense is a violent felony.  Under this

approach:

> "[courts] look only to the fact of conviction and the
> statutory definition of the prior offense, and do not
> generally consider the particular facts disclosed by
> the record of conviction.  That is, we consider whether
> the elements of the offense are of the type that would
> justify its inclusion within the residual provision,
> without inquiring into the specific conduct of this
> particular offender."  <u>James</u> [<u>v. United States</u>], 550
> U.S. [192], at 202 [127 S.Ct. 1586] (internal quotation
> marks and citations omitted); <u>see also</u> <u>Taylor v. United
> States</u>, 495 U.S. 575, 599-602, 110 S.Ct. 2143, 109
> L.Ed.2d 607 (1990).

<u>Sykes v. United States</u>, 131 S.Ct. 2267 (June 9, 2011).

"Only where the crime includes a range of conduct, some of

which falls outside the ACCA's definition, may the court 'peek

under the coverlet' to determine what offense was at issue in the

underlying conviction."  <u>Oliveira</u>, 2011 WL 2909816 at *7 <u>citing</u>

<u>United States v. Gautier</u>, 590 F. Supp. 2d 214 at 222 (for ACCA

purposes in determining an offense to be a violent felony, the

sentencing judge court could not look to underlying police

reports or complaint applications not adopted by the defendant as

part of the plea or colloquy; the court may look only to the jury

instructions, charging document, plea agreement, the transcript

of the plea colloquy, or any facts confirmed by the defendant at

sentencing and any comparable judicial record) <u>and</u> <u>citing</u>

<u>Shepard v. United States</u>, 544 U.S. 13, 16 (2005)(other citations

omitted). "Where the defendant is convicted under a statute that encompasses both violent and non-violent offenses (as in assault and battery), and the government has failed to show under <u>Shepard</u> that the defendant was convicted of the more violent offense, the court applies the categorical approach to the non-violent offense." <u>Oliveira</u>, 2011 WL 2909816, at *7.

With these standards in mind, the Court turns to Dubose's claims, starting with the claim that his Assault and Battery offense does not qualify as a predicate violent felony offense under the ACCA.

C.    <u>The Assault and Battery Charge</u>

This Court finds that Dubose is correct when he asserts that his 2006 Assault and Battery conviction (<u>see</u> PSR, ¶ 40), may <u>not</u> be used as a predicate office under the ACCA, because the Government has not shown that this offense was a "violent felony" under the ACCA, in light of recent First Circuit case law, <u>see</u> <u>Holloway</u>, *supra*; the fact that the charging instrument against Dubose contained the language "did assault and beat" is not sufficient to constitute a "violent felony" for ACCA purposes.

To expound further, the First Circuit in <u>Holloway</u> revisited and rejected its prior holding in <u>United States v. Mangos</u>, 134 F.3d 460, 464 (1st Cir. 1998) and ruled that <u>Mangos</u> was no longer good law, because the boilerplate language "did assault and beat"

in the charging instrument, standing alone, did not establish a violent felony. <u>Holloway</u>, 630 F.3d at 255-56. The <u>Holloway</u> Court required further analysis before district courts could conclude whether a simple Assault and Battery qualified under the ACCA; this analysis normally would involve looking to certain documents, and consideration whether the conduct described in those documents fell within the force clause or the residual clause of the ACCA.

Here, the Government does not strenuously object to Dubose's argument in this regard. Thus, applying <u>Holloway</u>, and without additional <u>Shepard</u>-approved evidence, this Court will not consider the Assault and Battery offense as a predicate offense under the ACCA.

Nevertheless, even if this Court were to discount the Assault and Battery charge in ¶ 40 of the PSR, Dubose <u>still</u> has at least three predicate offenses rendering the ACCA applicable, as discussed below.

D.   <u>The Armed Robbery Offense Constitutes a Predicate Offense For ACCA Purposes</u>

The parties do not dispute that the Armed Robbery offense contained in the PSR, ¶ 37, falls within the ACCA definition of a

violent felony.[17]

Accordingly, this Court finds this conviction to constitute the a predicate conviction for ACCA purposes.

E.    The Resisting Arrest Offenses Constitute Two Prior Felony
      Convictions For ACCA Purposes

Dubose's criminal history reflects two separate offenses for Resisting Arrest.  See PSR ¶¶ 38 and 39.[18]

---

[17]The PSR, ¶ 37, also notes that Dubose was convicted of Armed Assault with Intent to Rob, and Assault and Battery with a Dangerous Weapon.  These would also qualify as predicate offenses under the ACCA, but are treated together as one predicate offense.

[18]Dubose does not suggest that the Resisting Arrest charge in the PSR, ¶ 39 (Docket No. 0307-CR 7480H), and the Resisting Arrest charge in the PSR, ¶ 38 (Docket No. 0307-cr-7001E), should not be treated as separate charges pursuant to Amendment 709 to the Sentencing Guidelines in order to undermine the enhancement of his sentence under the ACCA.  Amendment 709 was proposed in May 2007, and became effective on November 1, 2007.  It restated the rules for determining when multiple crimes are to be counted as one for criminal history calculation purposes.  U.S. SENTENCING GUIDELINES § 4A1.2(a)(2)(2009)(as amended by Supp. to App. C., Amend. 709 (2009)).  Amendment 709 provides:

> Prior sentences are counted separately if the sentences
> were imposed for offenses that were separated by an
> intervening arrest.  If there is no intervening arrest,
> prior sentences are counted separately unless (A) the
> sentences resulted from offenses contained in the same
> charging instrument; or (B) the sentences were imposed
> on the same day.

Id.  In this case, the first arrest occurred on November 7, 2003, and Dubose was charged on November 10, 2003.  There was an intervening arrest (on November 29, 2003); Dubose was charged on December 1, 2003.  Thus, notwithstanding that Dubose was sentenced on both Resisting Arrest charges on the same day (June

Dubose's argument -- that the offenses arising out the

Massachusetts District Court (rather than the Superior Court)

constitute "misdemeanors" and not "felonies", and therefore

cannot be used as predicate offenses -- is misplaced, as is his

argument that the sentence must be to a "state prison" rather

than a house of correction.  The First Circuit has made clear

that a Resisting Arrest conviction under Massachusetts law is a

prior <u>felony</u> conviction, because, under Massachusetts law, it

carries a punishment of up to two and one-half years in jail or

the house of correction.[19]  <u>See</u> <u>United States v. Almenas</u>, 553

F.3d 27, 31-32 (1st Cir. 2009] <u>citing</u> Mass. Gen. Laws ch. 268,

§ 32B.  <u>Almenas</u> also stated that:

> Neither the fact that Massachusetts law categorizes
> resisting arrest as a misdemeanor, nor the fact that
> [defendant] was not actually imprisoned for a term
> exceeding one year, affects our analysis.  A crime
> 'punishable' by imprisonment for a term exceeding one

---

22, 2004), Amendment 709 provides that each conviction shall be
counted separately.

[19]The ACCA provides that "any State offenses classified by the
laws of the State as a misdemeanor and punishable by a term of
imprisonment of two years or less" are not "crime[s] punishable
by imprisonment for a term exceeding one year."  <u>Dancy</u>, 640 F.3d
at 465 n.6; 18 U.S.C. § 921(a)(20).  Resisting Arrest offenses
under Massachusetts law do not fall within this provision,
because the punishment is by imprisonment in a jail or house of
correction for not more than two and one-half years (not two
years or less).  Mass. Gen. Laws ch. 268, § 32B.

year is a felony for purposes of the career offender
provision, 'regardless of whether such offense is
specifically designated as a felony and regardless of
the actual sentence imposed.'

Id. at 32 citing U.S.S.G. § 4B1.2, cmt. n.1.

Finally, Almenas discussed the elements of the crime, and,
taking a categorical approach, stated that Resisting Arrest under
Massachusetts law is typically a crime of violence.  Almenas, 553
F.3d at 31-35; 35 n.9 (noting that the enumerated crimes
"typically" involves purposeful, violent, and aggressive conduct,
and stating that "if a defendant's flight from arrest is to
qualify as resisting arrest under Massachusetts law, it must
either involve the use or threatened use of force or create a
substantial risk of injury to a police officer or another.").

The Almenas holding was recently expanded on by the First
Circuit in Dancy, addressing the question whether a defendant's
Massachusetts conviction for assault and battery on a police
office qualified as a violent felony in order to serve as a
predicate offense under the ACCA.  The First Circuit stated in
Dancy that:

As we have said of the Massachusetts crime of resisting
arrest, the crime involves "resisting the authority of
a police officer, an official charged with defending
the public." [United States v.] Almenas, 553 F.3d [27]
at 34 [1st Cir. 2009].  **Resisting arrest poses an
arguably greater risk than the enumerated offenses
because the officer is "duty-bound to effectuate the
arrest," resulting in "a significant risk of conflict**

28

**and, concomitantly, a significant risk of injury."** <u>Id.</u>
The same is true for ABPO, which involves similar
dynamics.

<u>Dancy</u>, 640 F.3d at 470 (emphasis in bold and brackets added).[20]

_____

[20]Most recently, the United States Supreme Court addressed the
question whether, under Indiana law, unlawful flight from law
enforcement by a vehicle was a violent felony for purposes of
enhancement under the ACCA.  <u>Sykes v. United States</u>, 131 S.Ct.
2267 (June 9. 2011).  In that case, Sykes argued that vehicle
flights do not involve the kind of dangers contemplated by the
ACCA residual clause.  The Supreme Court rejected this argument,
stating:

> Risk of violence is inherent to vehicle flight.
> Between the confrontations that initiate and terminate
> the incident, the intervening pursuit creates high
> risks of crashes. It presents more certain risk as a
> categorical matter than burglary.  It is well known
> that when offenders use motor vehicles as their means
> of escape they create serious potential risks of
> physical injury to others.  Flight from a law
> enforcement officer invites, even demands, pursuit.  As
> that pursuit continues, the risk of an accident
> accumulates.  And having chosen to flee, and thereby
> commit a crime, the perpetrator has all the more reason
> to seek to avoid capture.
>
> Unlike burglaries, vehicle flights from an officer by
> definitional necessity occur when police are present,
> are flights in defiance of their instructions, and are
> effected with a vehicle that can be used in a way to
> cause serious potential risk of physical injury to
> another.

<u>Id.</u> at 2274.  <u>Sykes</u> further stated that: "Serious and substantial
risks are an inherent part of vehicle flight.  Under subsection
(b)(1)(A), they need not be proved separately to secure a
conviction equal in magnitude to those available for other forms
of resisting law enforcement with a vehicle that involve similar
risks." <u>Id.</u> at 2276.  In this case, the charges against Dubose
were Resisting Arrest and not unlawful vehicle flight.  It is
noted however, that the PSR reflects that both the Resisting

In light of the above, the Court deems the two Resisting Arrest Offenses to qualify as predicate offenses under the ACCA.

F.   <u>The Ineffective Assistance of Counsel Claims, and the Claims of Error By the District Court in Applying the ACCA</u>

Because Dubose's Resisting Arrest convictions constitute two predicate convictions under the ACCA, and because the Armed Robbery constitutes the third predicate offense sufficient to trigger the ACCA, this Court need not address Dubose's arguments in detail with respect to his drug convictions (Possession of Class B substance with Intent to Distribute), but finds this offense also qualifies as a predicate offense.  <u>See</u> PSR, ¶ 38.

In sum, upon review of Dubose's criminal history, this Court finds that Dubose was, and still is, subject to application of the ACCA, notwithstanding the Court's inability to consider the Assault and Battery offense.  It follows, therefore, that under <u>Strickland</u>, Dubose fails to establish his claim for ineffective assistance of counsel with respect to failure to object or

_____

Arrest offenses involved serious potential risk of physical injury to another.  In the first Resisting Arrest case, Dubose pushed away from officers and fled, leading officers on a pursuit.  Officers caught the defendant, and he struggled while they were placing him under arrest.... Several officers were treated for injuries.  <u>See</u> PSR, ¶ 38.  The second Resisting Arrest charge arose against Dubose after he was operating a vehicle, drove into a school parking lot and jumped out of the vehicle while it was moving, causing the vehicle to crash into a fence on school property.  <u>See</u> PSR, ¶¶ 39.

properly investigate as to the application of the ACCA or with respect to the PSR information regarding his criminal history. Dubose has not established that counsel's performance was deficient under the first prong of <u>Strickland</u>,[21] nor has he shown that any deficient performance resulted in prejudice to him (or, for that matter, that this Court's application of the ACCA based on his criminal record resulted in any prejudice to him).

With respect to the allegation that Dubose would not have accepted a plea deal had he known he was given erroneous advice about the application of the ACCA, this claim fails in light of the Court's finding that the ACCA does apply to him. In any event, the Court finds that Dubose's contention in this regard is wholly self-serving, without any evidentiary support whatsoever, either direct or inferential, to show that, at the time of the guilty plea, and not in hindsight, he would have not pled guilty to the charges against him. Thus, his assertion is to no avail.

Similarly, Dubose's claims of error by this Court in applying the ACCA based only on the information contained in the PSR is rejected. It is proper for this Court to rely on the

---

[21]As noted above, Dubose's counsel did file objections to the PSR with respect to his criminal history record; however, the Probation Office declined to make any revisions based on the objections.

information contained in the PSR.[22]

Without belaboring the matter further, this Court finds that Dubose has not met his burden to demonstrate that § 2255 relief is warranted with respect to his enhanced sentence under the ACCA.

Accordingly, Dubose's § 2255 motion is <u>DENIED</u> with respect to challenges to his sentence under the ACCA, and the Government's Motion for Summary Dismissal is <u>ALLOWED</u> as to these

---

[22]<u>See</u> <u>United States v. Webster</u>, 636 F.3d 916, 919 (8th Cir. 2011)("In weighing the evidence [of prior felony convictions], the district court may consider the ... PSR itself...." (other considerations omitted)); <u>United States v. Reed</u>, 372 Fed. Appx. 413, 416 (4th Cir. 2010) ("we have held that a sentencing court is entitled to rely on 'the conclusive significance' of the record, <u>see</u> <u>Shepard</u>, 544 U.S. at 25, 125 S.Ct. 1254, as set out in the presentence report. <u>Thompson</u>, 421 F.3d at 285 (sentencing court entitled to rely on the presentence report because it 'bears the earmarks of derivation from <u>Shepard</u>-approved sources'); <u>United States v. Brown</u>, 510 F.3d 57, 75 n.15 (1st Cir. 2007) (citing, <i>inter alia</i>, <u>United States v. Romero-Rendón</u>, 220 F.3d 1159, 1164-65 (9th Cir. 2000)(no error for district court to rely on PSR entry as evidence of conviction for ACCA enhancement where defendant had not challenges entry's accuracy). <u>See generally</u> <u>United States v. Love</u>, 134 F.3d 595, 606 (4th Cir. 1998)(quoting <u>United States v. Terry</u>, 916 F.2d 157, 162 (4th Cir. 1990))('A mere objection to the finding in the presentence report is not sufficient.... Without an affirmative showing the information is inaccurate, the court is free to adopt the findings of the [presentence report] without more specific inquiry or explanation.? [sic]'"))(bracket added). <u>United States v. Bennett</u>, 472 F.3d 825, 834 (11th Cir. 2006)(district court did not err in relying on the undisputed facts in the PSR to determine that his prior convictions were violent felonies under the ACCA). <u>See generally</u>, <u>United States v. Hunter</u>, 418 Fed. Appx. 490, 494 (7th Cir. 2011)(when determining applicability of § 924(e), courts may rely on undisputed sections of the PSR).

claims.

G.  The Claims Challenging Dubose's Conviction are Barred

Having addressed the issues with respect to challenges to Dubose's sentence, the Court now turns to challenges asserted in connection with the conviction itself.

1.  Claims Previously Decided on Direct Appeal

Dubose's challenges to his conviction are grounded on the Police Officers' conduct on February 22, 2007 when he was arrested.  These challenges were the subject of his motion to suppress, which this Court rejected.  On appeal, the First Circuit reviewed the merits of this Court's decision, and affirmed.  See Dubose, No. 08-2382 (1st Cir. 2009) cert. denied DuBose v. United States, 131 S.Ct. 536 (2010)(No. 10-6629).

In light of this, Dubose is foreclosed from relitigating these claims in this § 2255 motion.  See Section II(B)(1), *supra* (citing cases).

Further, this Court considers that Dubose's assertions regarding police misconduct add nothing new to the mix -- he presents no new evidence nor any basis for this Court to find that extraordinary circumstances exist showing a miscarriage of justice would result should his claims not be considered (as, for example, a *bona fide* claim of actual innocence or cause and prejudice).  Thus, Dubose's § 2255 motion is DENIED with respect

to his challenge to his conviction based on alleged police
misconduct or violation of law.

 2.   The Failure to Provide *Miranda* Rights While in Cruiser

 Finally, Dubose raises a claim -- not in the § 2255 motion
-- but in the course of his arguments in support thereof, that he
was never given Miranda rights while he was placed in the back of
the police cruiser.[23]   Dubose does not expand on this allegation,
nor does he provide any context for this assertion.   This bald
assertion, without more, is insufficient to meet his burden to
warrant § 2255 relief.

 Moreover, Dubose's claim is deemed to have been waived.   See
Colon-Cardona v. United States, 2011 WL 1238422 (D.P.R. 2011).
Like Dubose, in Colon-Cardona, the petitioner claimed, in a
§ 2255 motion, that he had not been given Miranda warnings at the
time of his arrest.   The District Court rejected this claim
because petitioner had pled guilty, and thus was barred from
raising any constitutional claims, including the failure to
receive his Miranda rights, where alleged violations had occurred
prior to the entry of the guilty plea.   Colon-Cardona, 2011 WL
1238422, at *1 citing, *inter alia*, United States v. Cordero, 42
F.3d 697, 699 (1st Cir. 1994) for the proposition that a guilty

_____

[23]The Respondent does not address this issue in its Motion for
Summary Dismissal.

plea waives prior non-jurisdictional constitutional errors.

"When a criminal defendant has solemnly admitted in open court

that he is in fact guilty of the offense with which he is

charged, he may not thereafter raise independent claims relating

to the deprivation of constitutional rights that occurred prior

to the entry of the guilty plea." <u>Id.</u> at 698-99.

<u>Colon-Cardona</u> further explained:

> "A guilty plea represents a break in the chain of
> events which has preceded it in the criminal process.
> When a criminal defendant has solemnly admitted in open
> court that he is in fact guilty of the offense with
> which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry
> of the guilty plea." <u>Tollett v. Henderson</u>, 411 U.S.
> 258, 267 (1973). Petitioner Colon-Cardona waived his
> right to any prior constitutional claim when he pled
> guilty.

<u>Colon-Cardona</u>, 2011 WL 1238422, at *1. <u>See Acevedo-Ramos v.</u>

<u>United States</u>, 961 F.2d 305 (1st Cir. 1992)("It is clear that a

plea of guilty to an indictment is an admission of guilt and a

waiver of all non-jurisdictional defects. <u>See Valencia v. United</u>

<u>States</u>, 923 F.2d 917, 920 (1st Cir. 1991); <u>see also</u> [<u>United</u>

<u>States v.</u>] <u>Doyle</u>, 348 F.2d [715] at 718 [2d 1965])")(brackets

added).

Here, Dubose entered a conditional plea of guilty, expressly

reserving his right to have the Court of Appeals review this

Court's March 31, 2008 Memorandum and Order denying his Motion to

Suppress Evidence. <u>See</u> Notice of Conditional Plea of Guilty (Docket No. 30). The Motion to Suppress Evidence challenged a warrantless search of Dubose by the Boston Police Department, on the grounds that the stop of Dubose was not based on reasonable suspicion that a crime had or was about to occur, the subsequent frisk was impermissible, and the statements made by Dubose should be suppressed as fruit of the poisonous tree. <u>See</u> Motion to Suppress Evidence (Docket No. 14); Memorandum in Support (Docket No. 15). The reservation of rights did not include review of the issue whether Dubose had been given his <u>Miranda</u> rights while he was in the police cruiser. Thus, this Court cannot find that the conditional plea falls outside the rationale of <u>Colon-Cardona</u> and other cases cited herein, nor can this Court find that Dubose has met his burden to demonstrate that § 2255 relief is warranted based on the allegation that he was not given his <u>Miranda</u> rights in the police cruiser.

For all these reasons, Dubose's challenges to his criminal conviction are <u>DENIED</u>, and the Government's Motion for Summary Dismissal is <u>ALLOWED</u>.

### III. CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Defendant Dubose's request for appointment of counsel (contained in the body of his petition) is <u>DENIED</u>;

2.  Defendant Dubose's Motion to Vacate, Set Aside, or Correct
    Sentence pursuant to 28 U.S.C. § 2255 (Docket No. 62) is
    <u>DENIED</u> in its entirety;

3.  The Government's Motion for Summary Dismissal (Docket No.
    64) is <u>ALLOWED</u>; and

4.  Civil Action No. 11-11249-PBS shall be <u>DISMISSED</u> in its
    entirety.[24]  A separate Order of Dismissal shall enter.


SO ORDERED.

                                    <u>/s/ Patti B. Saris</u>
                                    PATTI B. SARIS
                                    UNITED STATES DISTRICT JUDGE

---

[24]The civil action was opened by the Clerk's Office for
administrative purposes only; it shall be terminated as a pending
case in light of this Memorandum and Order denying § 2255 relief.